**In re TLI, INC., et al., Debtors.**

**TLI, INC., Appellant,**

v.

**D.M. LYNN, Trustee, Appellee.**

**Civil Action No. 3:97–CV–0201–D.**

**Bankruptcy Nos. 387–35958–HCA–11, 388–32241–HCA–11 to 388–32244–HCA–11 and 388–30909–HCA–11.**

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 3, 1997.

Michael A. Bickford, Fuller, Tubb & Pomeroy, Oklahoma City, OK, Joe E. Marshall,

Munsch, Hardt, Kopf, Harr & Dinan, P.C., Dallas, TX, for Appellant.

D. M. Lynn, Stutzman & Bromberg, P.C., Dallas, TX, for Appellee.

FITZWATER, District Judge.

This is an appeal from an order of the bankruptcy court directing that unclaimed funds transferred to the court registry from a liquidating reorganization plan claims fund be distributed in payment of administrative expenses and otherwise escheat to the United States. The court affirms the order in part, and reverses and remands it in part.

## I

### A

TLI, Inc. (formerly Trailways Lines, Inc.) and five related entities filed for chapter 11 protection. The bankruptcy court later confirmed the debtors' joint plan of reorganization (the "Plan"). The Plan provided for the liquidation of all six debtors and their ultimate merger into "Reorganized TLI" ("TLI"), for the purpose of creating a single entity to dispose of the debtors' assets. The Plan also established a cash pool in the sum of $9,005,000 (the "Claims Fund") that provided *inter alia* for distribution of funds, after payment of expenses, to priority and unsecured creditors. The Claims Fund included "the funds and property as provided in the Plan delivered to the Creditors' Trustee, which shall constitute an irrevocable trust as established by the trust indenture, to be distributed under the Plan." Appellee D.M. Lynn (the "Trustee"), as the Creditors' Trustee, was to receive, manage, and distribute the Claims Fund and determine allowed claims payable from the Fund. All proceeds derived from the liquidation of TLI's assets were to be paid to The First National Bank of Boston (the "Bank"), a creditor. If the Bank's claims were fully satisfied, any remaining assets of TLI were to be paid into the Claims Fund. After disposition of all of its assets, TLI would cease to exist.

At issue in the present appeal are unclaimed funds (the "Unclaimed Funds") deposited from the Claims Fund into the court registry. The Plan did not originally provide

for this manner of disposition. Instead, § 6.7 established that property that remained unclaimed after the later of three years after confirmation, or 60 days after the final order allowing the claim of that entity, would return to the Claims Fund for distribution to other claimants. Apart from the effect of complete distribution, the Plan did not impose a restriction on this recirculation process.

In June 1993, following three interim distributions and one final distribution, the Trustee sought bankruptcy court approval to deposit the Unclaimed Funds into the court registry and to be relieved of any further responsibility for them. The sum of $108,-311.50 remained in the Claims Fund because of final distribution checks that had not been cashed. Recycling $100,000 for payment of approximately $27 million in allowed unsecured claims was impractical. Distributing this amount would have paid a burdensomely small dividend of less than 1/3 of 1%. The bankruptcy court granted the Trustee's motion, overruling the objections of the Bank.

Before entry of an order reflecting this ruling, however, the Trustee notified the court that there were additional unpaid administrative expenses. On November 1, 1993 the Trustee moved the court to authorize payment of administrative expenses from the funds to be deposited in the court registry. On February 11, 1994 the bankruptcy court granted the relief that the Trustee had requested. The court authorized the deposit of the Unclaimed Funds into the court registry and ordered that to the extent such funds remained in the court registry after July 4, 1994, administrative claimants could obtain payment from these funds by motion and court order.

The Trustee applied on August 1, 1995 for authority to pay administrative expenses. In September 1995 the bankruptcy court granted in part the Trustee's motion. The bankruptcy clerk's office later advised the court that it could not disburse the funds as ordered because they were designated for specific creditors. The bankruptcy court responded by vacating its order and denying without prejudice the Trustee's motion. The court indicated that it would consider further argument on the propriety of ordering funds held in the registry to be paid to administrative claimants.

B

In August 1996 TLI asked the bankruptcy court to award it the funds in the court registry. TLI asserted *inter alia* that 11 U.S.C. §§ 347 and 1143 dictated that any funds unclaimed five years after entry of the plan confirmation order vested in it as the debtor. The Trustee applied to the court in September 1996 for an order distributing certain of the funds to him so that he could pay $42,250.65 in administrative expenses.

The bankruptcy court granted the Trustee's application and denied TLI's motion in an order entered November 22, 1996. It held that TLI had no right to the funds. The court awarded the Trustee the funds he sought from the court registry for payment of administrative claimants. It directed that an additional sum be set aside for other anticipated costs, and that the balance of the funds escheat to the United States.

The bankruptcy court reasoned that pursuant to § 5.6 of the Plan, a plan proponent (which included TLI) was under no circumstances entitled to any claim or recovery from or against the Claims Fund except as provided by § 6.2.F(iv) of the Plan. That section dictated that if the costs and expenses (including reasonable attorney and other professional fees) and compensation of the Trustee did not exceed the aggregate sum of $200,000, the Trustee would rebate the excess amount to TLI. The court held that the debtors were prohibited from participating in the Claims Fund, that the court's primary concern was for the creditors, and that its secondary concern was for administrative claimants. It concluded that Congress had specifically chosen the word "debtor" in § 347(b) with the intent that unclaimed property would re-vest only in a debtor who continued with ongoing business operations. The court noted that the Plan provided that certain of the debtors' property was to be liquidated for the benefit of the Bank and the remainder was to vest in a trust for the benefit of unsecured creditors. The court held that the reorganized debtor provided for

in the Plan was not the "debtor" contemplated by § 347(b). Therefore, the Unclaimed Funds did not re-vest in TLI, Inc. or the other debtors. The court concluded that as far as § 1143 required the Trustee to perform an act, the act was accomplished in the form of the court's February 11, 1994 order authorizing the Trustee to deposit Unclaimed Funds into the court registry and establishing a procedure for payment of unpaid administrative claims. It also held that the pleadings relating to payment of professionals were acts under § 1143. The court directed that the balance of the Unclaimed Funds be paid to or set aside in trust for professionals, or otherwise escheat to the United States, because Plan § 5.6 directed that money in the court's registry go to creditors rather than to Plan proponents, and that it would be an abuse of the Code and chapter 11 for Walter Kellogg to acquire these funds "as a sort of CEO or operating officer of a fictional T.L.I. entity ... under some fiction that there is a debtor, either for his own benefit, and/or for payment of himself and his professionals."

TLI appeals the bankruptcy court's November 22, 1996 order.

## II

The material facts of this appeal are undisputed. The questions presented are issues of law. Review of the bankruptcy court's order is therefore *de novo*. *See In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798–99 (N.D.Tex.1986) (Fitzwater, J.).

## A

TLI asserts that it owns the Unclaimed Funds by virtue of the operation of §§ 347(b) and 1143 of the Code. It maintains that the bankruptcy court lacked authority to order payment of the funds to the Trustee for administrative expenses and to direct that the balance escheat to the United States. Section 347(b) provides:

Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b), 1129, 1173, or 1225 of this title, as the case may be, becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.

Section 1143 sets a five-year cap on the time-period that a plan can impose.

If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

Sections 347(b) and 1143 together establish an outer limit of five years from entry of a plan confirmation order within which a creditor required to perform an act as a condition of participating in a plan distribution must accomplish the act or relinquish its right to participate. If a creditor does not take the required action within this period, the "unclaimed funds are automatically to be returned to the Debtor." *In re Goldblatt Bros., Inc.*, 132 B.R. 736, 738 (Bankr.N.D.Ill. 1991). These Code sections are designed to achieve "finality, judicial economy and the avoidance of disruptive, wasteful litigation over funds which remain unclaimed five years after confirmation." *Id.* (footnote and citation omitted); *cf. Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) (stressing importance of prompting parties to act and of finality, and holding in chapter 7 case that trustee could not object to exemption after prescribed period had elapsed). The five-year period in this case expired on October 12, 1993.

The Trustee argues that § 347(b) is inapplicable because the Plan and the bankruptcy court's order authorizing payment of the Unclaimed Funds into the court registry make clear that TLI was not entitled to any sums contained in the Claims Fund or the court registry. He posits that the Plan specifically provided that under no circumstances could

TLI obtain funds from the Claims Fund. TLI agrees with the Trustee that had the Unclaimed Funds remained in the Claims Fund, § 347(b) would not control. TLI nevertheless asserts that once the Unclaimed Funds were deposited in the court registry, they were no longer under the auspices of the Plan or subject to the limitations expressed in § 5.6 of the Plan. The Trustee replies that the funds placed into the court registry retained their character as part of the Claims Fund and that the bankruptcy court's order independently established that TLI could not obtain registry funds.

**B**

■ The court holds that the sums deposited in the court registry did not retain their character as Claims Fund money. Article XIV of the Plan defines "Claims Fund" as "the funds and property as provided in the Plan delivered to the Creditors' Trustee, which shall constitute an irrevocable trust as established by the trust indenture, to be distributed under the Plan." Plan Art. XIV at 34. Under the Plan, appellee Trustee or his successor administered distribution of the Claims Fund. The Plan gave the Trustee exclusive control of the Claims Fund. It empowered him to "receive, manage and disburse the Claims Fund in accordance with the Plan." The Plan did not provide that unclaimed funds could be deposited into the court registry when the Trustee no longer desired to perform his intended functions. Section 6.2.G prescribed a process for resignation and replacement of the Trustee, not for revision of the Claims Fund payment regimen.

When the bankruptcy court transferred the Unclaimed Funds to the court registry, they were no longer part of the Claims Fund. The transfer relieved the Trustee of his duties under the Plan,[1] and excused him from his obligation to distribute the funds according to the Plan. Once the Unclaimed Funds were transferred into the court registry, the Bankruptcy Code, rather than the Plan, governed the rights of claimants to the sums on deposit.

**III**

■ The Trustee maintains that the doctrine of res judicata precludes TLI from claiming the Unclaimed Funds.

In *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1051 (5th Cir.1987), the Fifth Circuit held that "a bankruptcy order is entitled to the effect of *res judicata.*" TLI concedes that had the Unclaimed Funds remained in the Claims Fund, it would have had no right to them. Res judicata bound TLI to the provisions of the confirmed Plan, including those that governed Claims Fund distributions. When the proceeds remaining in the Claims Fund were transferred to the court registry, however, the Plan's Claims Fund provisions were no longer binding on TLI. TLI could make a claim, while adhering to the Plan, because nothing in the Plan barred it from pursuing funds transferred to the court registry.

■ The Trustee asserts that even if the Plan and the Confirmation Order do not preclude TLI's claim, the bankruptcy court's decision at the July 1993 hearing—that the Bank was not entitled to the Unclaimed Funds—bars the claim. The well–settled elements for res judicata require that

the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.

*Id.* (quoting *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983)). The "identity of parties" element of res judicata is satisfied "not only by identity of 'formal or paper' parties but also of parties in interest, 'that is, ... persons whose interests are properly placed before the court by someone with standing to represent them.'" *Shoaf,* 815 F.2d at 1051 (quoting *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir.1984)). Not only are the Bank

1. In the relevant motion, the Trustee asked to "be relieved of any future responsibility with respect to the Unclaimed Funds."

and TLI not the same party, but TLI's rights to the Unclaimed Funds could not have been adjudicated at the time of the hearing because it did not obtain any rights to the funds until after February 11, 1994, the date the bankruptcy court ordered that the remainder of the Claims Fund be transferred to the court registry. The first element required for the application of res judicata has not been satisfied.

TLI is not barred by res judicata from asserting a right to the Unclaimed Funds after they were transferred into the court registry.

## IV

The court must next decide whether the Code authorized the bankruptcy court to pay administrative expenses from the funds held in the court registry.

## A

Section 503 of the Code permits the bankruptcy court, after notice and hearing, to grant an entity's request for payment of an administrative expense.[2] 11 U.S.C. § 503. Section 6.2.F of the Plan established the procedure for payment of administrative expenses from the Claims Fund. When the Claims Fund ceased to exist, however, this provision no longer controlled. The Code governed the payment of administrative expenses.

■ TLI contends that the Trustee was not timely in filing his request for payment of administrative expenses. Neither the Code nor the Bankruptcy Rules establish a specific limitations period for requests for payment of administrative expenses or for payment of the expenses. Bankruptcy courts have considerable discretion in addressing the timing of compensation payments. *See* 4 Collier on Bankruptcy ¶¶ 503.02[1] & 503.03[3] (Lawrence P. King ed., 15th ed. rev.1997). The

appellate record does not reflect an order or a Plan provision that sets a bar date for filing requests for administrative expenses. The court concludes that the bankruptcy court had the authority under § 503 to authorize payment of these expenses to the Trustee.

## B

■ Although § 503 empowered the bankruptcy court to direct the payment of administrative expenses once the Plan provisions no longer controlled, the court must still determine whether payment of these expenses after the funds had been transferred to the court registry conflicts with §§ 347(b) and 1143.[3]

As its title indicates, § 347(b) applies to "Unclaimed Property." Because the term is not defined by the Code, the court looks to both the Code's definition of "claim" and the plain language of § 347(b) to determine its meaning in the present context. The Code defines "claim" as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Section 347(b) dictates, in pertinent part, that property is unclaimed if no one has performed a required condition for participation in a plan distribution as of the expiration of time allowed in a chapter 11 case.

The funds that the Trustee requested for payment of administrative expenses were not unclaimed property in either respect. Under

---

**2.** Because neither party has questioned whether the expenses requested by the Trustee are "administrative expenses" within the meaning of § 503, the court assumes that they are.

**3.** Prior to the transfer of the Unclaimed Funds to the court registry, res judicata prevented TLI from relying on §§ 347(b) and 1143 to obtain any

portion of the Claims Fund. Because the Claims Fund provisions no longer were binding on TLI following the transfer, TLI could insist on application of the Code's requirements to funds held in the court registry. The court must therefore address whether §§ 347(b) and 1143 precluded the payment of administrative expenses.

the Code's definition of "claim," unclaimed property is that with respect to which no one has a right to payment. Plan § 6.2.F(i) provided that all costs, expenses, and obligations incurred by the Trustee in administering the Claims Fund and carrying out his duties were to be charged against the Claims Fund and could be paid by the Trustee. In November 1993, prior to transfer of the Unclaimed Funds to the court registry, the Trustee moved for an order authorizing administrative claimants to obtain payment from the funds to be deposited in the court registry.[4] The Trustee essentially requested that the court grant him a right to payment from these funds. Although the Plan did not include a procedure for requesting payment of administrative expenses from sources other than the Claims Fund, it did provide for bankruptcy court involvement in the payment of administrative expenses.[5] Therefore, the court was acting in accordance with the Plan when it entered its February 11, 1994 order granting administrative claimants the right to payment from any funds remaining in the Unclaimed Funds after a specified period of time. Regardless of the fact that the Unclaimed Funds were transferred to the court registry, the portion that the bankruptcy court directed be used to pay administrative expenses was not unclaimed property.

Section 347(b) does not change this result. It requires performance of an act as a condition to participation. Section 6.2.F of the Plan provided that administrative expenses would be a charge against the Claims Fund if the Trustee presented a report of compensation and expenses to the Plan Committee prior to the date of payment, or if the bankruptcy court issued an order in the event of any objections to the report. The Plan effectively required the Trustee to give notice of the expenses he intended to charge against

the Claims Fund before administrative claimants could participate in Claims Fund distributions. The court holds that the Trustee adequately performed the act of giving notice, as required under the Plan, when he filed the November 1993 motion requesting that the bankruptcy court authorize administrative claimants to obtain payment from funds to be deposited in the court registry. This conclusion is supported by the fact that no one objected to his motion.

### C

Accordingly, the court affirms the part of the bankruptcy court's November 22, 1996 order that authorized the Trustee to pay $42,250.65 to professionals and reserved $7,000 for payment of additional administrative costs. The bankruptcy court had the authority to make such an order under § 503 of the Code, and the order did not conflict with §§ 347(b) and 1143.

### V

The court next considers whether the bankruptcy court had the power to direct that the balance of the Unclaimed Funds escheat to the United States.

### A

The bankruptcy court cited § 105(a) of the Code as authority for ordering the funds to escheat. Section 105 empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. But it "merely provides a means by which bankruptcy courts may exercise the statutory powers vested in them." *Forlini v. Northeast Sav., F.A.*, 200 B.R. 9, 11 (D.R.I. 1996) (citing *In re Regency Realty Assocs.*, 179 B.R. 717, 719 (Bankr.M.D.Fla.1995)). It

---

4. No responses or objections were filed in connection with the motion. Because TLI did not contest the Trustee's assertion in his brief or at oral argument that TLI received notice of the motion, the court assumes that TLI had notice.

5. Section 6.2.F(iii) of the Plan states:
   *Procedure for Payment.* The Creditors' Trustee's compensation and expenses and the charges of other professionals employed by the Creditors' Trustee or the Plan Committee shall be paid by the Creditors' Trustee from the

Claims Fund, provided that a report of compensation and expenses intended to be paid is furnished to the Plan Committee in writing at least 10 days prior to the date of payment and no objections are filed by at least three members of the Plan Committee with the Bankruptcy Court within the 10–day period. In the event of such an objection, such payments shall occur only after the appropriate order of the Bankruptcy Court.

"does not confer 'carte blanche' to enter orders that ... 'override explicit mandates of other sections of the Bankruptcy Code or mandates of other state and federal statutes.'" *Forlini*, 200 B.R. at 12 (quoting 2 Collier on Bankruptcy ¶ 105.01, at 105–5 (Lawrence P. King, ed., 15th ed.1996) (citations omitted)); *see also In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir.1995) (holding that a § 105 injunction "must be consistent with the rest of the Bankruptcy Code" and "cannot alter another provision of the code"); *In re Smith*, 21 F.3d 660, 666 (5th Cir.1994) ("Bankruptcy courts cannot use their equity powers under Section 105(a) to fashion substantive rights and remedies not contained in the Bankruptcy Code or Rules or to negate substantive rights or remedies that are available."); *In re Minor*, 115 B.R. 690, 697 (D.Colo.1990) ("Section 105(a) does not authorize the court to enter orders which are in conflict with other provisions of the Code."). Section 105 did not empower the bankruptcy court to direct that the funds escheat to the United States if a contrary Code provision controlled.

## B

■ TLI argues that the bankruptcy court's order conflicts with the mandates of §§ 347(b) and 1143 of the Code. The court agrees. The plain language of § 1143 creates a five-year deadline for creditors to take any act required for participation in a distribution. If a creditor fails to comply with § 1143, § 347(b) provides that the unclaimed property "becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be." 11 U.S.C. § 347(b). Together, these provisions evince an unmistakable point at which unclaimed funds automatically become the property of the debtor or acquiring entity. *See* 3 Collier, *supra*, ¶ 347.03, at 347–6; *see also Goldblatt*, 132 B.R. at 738 ("[The] statute provides a clear bright-line rule that unclaimed funds are automatically to be returned to the Debtor."). To the extent they require creditors to act upon their rights or risk losing their claims, §§ 347 and 1143

function akin to statutes of limitations designed to provide repose after the passage of a reasonable time for action. 3 Collier, *supra*, ¶ 347.01; *see also* 8 Collier, *supra*, ¶ 1143.01. There is no indication in either statute that its operation may be modified by court order. 3 Collier, *supra*, ¶ 347.03[2]; *see also In re George Rodman, Inc.*, 50 B.R. 313, 314 (Bankr.W.D.Okla.1985) (holding that §§ 347(b) and 1143 "set in place a means for dealing with unclaimed property which does not allow for any alternate scheme.").[6]

## C

Sections 347(b) and 1143 apply to the escheated funds if TLI is a "debtor" or an "entity acquiring the assets of the debtor under the plan" under § 347(b), and the creditors failed to perform an act required as a "condition to participation in distribution" under a confirmed plan.

### 1

■ The Trustee contends, and the bankruptcy court held, that TLI cannot obtain the Unclaimed Funds because it is not the "debtor" contemplated by § 347(b). He asserts that § 347(b) does not include reorganized debtors like TLI created in liquidating reorganizations. Nothing in § 347(b) suggests an intent to exclude such debtors from collecting unclaimed funds. This is particularly true because exclusion of debtors created out of liquidating reorganizations would thwart Congress' goal of providing a time limit for creditors to take action under both reorganizations and liquidations. Section 347(a) presently operates analogously to the manner in which § 347(b) applies to chapter 7 liquidations. Section 347(a) provides for deposit of unclaimed funds into the court's registry 90 days after distribution. If they remain unclaimed for five years, the money is deposited in the Treasury to the credit of the United States. *See* 28 U.S.C. § 2042. Were the court to remove liquidating reorganizations from the ambit of § 347(b), § 347(a) would likewise be inapplicable.

---

**6.** The court recognizes that, under the doctrine of res judicata, a bankruptcy court order can bind a party seeking unclaimed funds. Res judi-

cata does not apply to this portion of the funds in the court registry for the reasons explained *supra* at §§ III and IV(B).

The result reached in this case, if undesirable, should not be addressed by misreading the statute, but by confirming a plan that provides for appropriate property disposition prior to the five-year deadline. As one commentator has noted:

> Section 347(b) may not provide a particularly satisfactory result in a liquidating chapter 11 case of a corporate debtor in which no entity acquires most of the debtor's assets and the debtor essentially ceases to exist. Although there may remain a corporate shell to which assets can be returned, doing so may serve no useful purpose. The best solution may be to draft plan provisions that provide alternate dispositions of property to take effect before the time that section 347(b) would become applicable.

3 Collier, *supra*, ¶ 347.03[2].

■ Even if TLI is not a "debtor" under this section, the plain language § 347(b) states that either the "debtor" or "the entity acquiring the assets of the debtor under the plan" can acquire any unclaimed property. Section 6.1.B of the Plan dictates that except as otherwise provided, "property of Debtors shall be vested in Reorganized TLI." The court concludes that TLI is the entity that acquired the assets of the debtors under the Plan within the meaning of § 347(b).[7]

### 2

■ Having concluded that TLI is at least an "entity acquiring the assets of the debtor" under § 347(b), the court now addresses whether the claimants to the Claims Fund were required to perform an "act as a condition to participation in the distribution" under the Plan. The court also considers whether they performed a required act.

According to the Trustee, if there were any conditions to participation under the Plan, they had been performed by the creditors within a five-year period. The Unclaimed Funds consisted of uncashed final distribution checks. TLI asserts that cashing a check is an act within the meaning of §§ 347(b) and 1143. The court agrees with TLI.

In addressing the argument that "presenting one's self and cashing a check is not 'the performance of any other act as a condition to participation ...,'" the bankruptcy court in *Rodman* deemed this construction not to be "within a reasoned interpretation of the Code nor does it comply with the stated congressional intent." *Rodman*, 50 B.R. at 314. The court held:

> The logic is that a period of time not to exceed five years from the order of confirmation be fixed for an entity to present itself and cash the check. If that requirement is unfulfilled unclaimed property is then distributed as required by § 347(b).

*Id.* Likewise, in *Arkansas v. Federated Dep't Stores, Inc.*, 175 B.R. 924, 932 (S.D.Ohio 1992), the court held that a § 347(b) issue does not arise until a creditor fails "to cash its distribution check within the five year deadline."

The Trustee contends that *Goldblatt*, 132 B.R. 736, and *In re The Signature Group*, 172 B.R. 501 (Bankr.D.R.I.1994), support his contention that cashing a check is not an act within the meaning of §§ 347(b) and 1143. The court disagrees. These cases are distinguishable because they involved creditors' committees that failed to make diligent check distributions within five years after plan confirmation.[8] The courts found that there were no acts that the creditors were required to perform as a condition to participation in plan distributions, and that would trigger §§ 347(b) and 1143. *Signature Group*, 172 B.R. at 502; *Goldblatt*, 132 B.R. at 740–41. Their "only function was to wait to receive their money." *Signature Group*, 172 B.R. at

---

7. The Trustee does not argue that any entity has acquired the assets of TLI within the meaning of § 347(b). Although the Bank took a majority of the proceeds of the sale of TLI's assets, the balance went into the Claims Fund. Thus it does not appear that the Bank in any sense "acquired" TLI.

8. The Trustee, on the other hand, made proper and timely distributions to TLI's creditors under the Plan. As a result, the Unclaimed Funds exist because certain of TLI's creditors have not yet cashed their distribution checks. In *Goldblatt* and *Signature Group* the unclaimed property existed because checks were never issued to creditors.

502. Both courts ordered the creditors' committees to disburse the funds within a designated time period. *Signature Group,* 172 B.R. at 502; *Goldblatt,* 132 B.R. at 741. The *Goldblatt* court reasoned that " § 1143 of the Code cannot possibly be read to allow a debtor to receive a windfall for its own negligence in failing to diligently complete the distributions under the plan, or here for delay occasioned by the Creditors' Committee in carrying out its duties." *Goldblatt,* 132 B.R. at 741.

These opinions suggest that §§ 347(b) and 1143 are triggered once creditors receive their checks, and then fail to cash them within an appropriate time. The *Goldblatt* court held that after the designated period had expired, "the unclaimed funds will be paid to the reorganized Debtor." *Id.* This would be the result under § 347(b). Likewise, the *Signature Group* court concluded that any funds remaining after a certain date be returned to the Trustee as "unclaimed funds." *Signature Group,* 172 B.R. at 502. Labeling the funds "unclaimed" suggests that § 347(b), which governs unclaimed property, would be controlling. Presuming that the courts expected the creditors' committees to distribute checks to creditors during the prescribed time periods, the unclaimed funds most likely would consist of uncashed checks. Thus cashing a check would of necessity be an act within the meaning of §§ 347(b) and 1143 in order for both courts to reach these conclusions regarding the unclaimed funds.

Finally, the Code's policy of finality supports the court's conclusion. If cashing a check were not an act within the meaning of §§ 347(b) and 1143, bankruptcy cases could potentially continue in perpetuity if distribution checks were never cashed. As the court has explained *supra* at § II(A), these Code sections are designed to achieve "finality, judicial economy and the avoidance of disruptive, wasteful litigation over funds which remain unclaimed five years after confirmation." *Goldblatt,* 132 B.R. at 738 (footnote and citation omitted).

It is undisputed that claimants have failed to perform the act of cashing their distribution checks and that the Unclaimed Funds consist of uncashed distribution checks. Be-

cause claimants have failed cash these checks, §§ 347(b) and 1143 govern the distribution of the Unclaimed Funds. To the extent the Unclaimed Funds are not also claimed by the Trustee for the payment of administrative expenses, they remain "unclaimed" and subject to §§ 347(b) and 1143.

Accordingly, the court reverses the part the bankruptcy court's November 22, 1996 order that directs the balance of the Unclaimed Funds to escheat to the United States.

\* \* \*

The bankruptcy court's November 22, 1996 order granting the Trustee's second motion to obtain funds and denying TLI's application is AFFIRMED in part and REVERSED in part, and this matter is REMANDED to the bankruptcy court for entry of an order consistent with this decision.

AFFIRMED in part, REVERSED and REMANDED in part.