**In re A.G.A. FLOWERS, INC., et al., Debtors.**

**In re Rich International Airways, Inc., Debtor.**

**Bankruptcy No. 01–13984–BKC–RAM. Adversary No. 96–17399–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

April 6, 2011.

allowed a student loan deduction. *See supra* n.5.

Mark D. Bloom, Miami, FL, for A.G.A. Flowers, Inc.

Peter H. Levitt, Miami, FL, for Rich International Airways, Inc.

*MEMORANDUM OPINION AND ORDER DENYING MOTIONS FOR RELEASE OF UNCLAIMED FUNDS*

ROBERT A. MARK, Bankruptcy Judge.

Funds locators typically locate creditors who did not cash or receive distributions in bankruptcy cases. The funds locators obtain an assignment of the creditor's claim, file an application to withdraw the funds deposited in the creditor's name and retain an agreed upon percentage of the money when the application is granted and the funds are dispersed.

The applications to withdraw unclaimed funds at issue in this Opinion are altogether different. They were filed by funds locators as the alleged assignees of former debtors whose assets were fully administered and distributed in Chapter 11 liquidating plans confirmed several years ago. The specific motions before the Court are:

A. Omega Consulting's May 28, 2010 Motion for Release of Unclaimed Funds [DE # 1697 in Rich International Airways, Inc.]; and

B. Jacob Consulting's December 4, 2009 Corrected Notice of Motion and Motion for Release of Unclaimed Funds [DE # 1950 in A.G.A. Flowers, Inc. ("AGA") ] (collectively, the "Unclaimed Funds Motion" or "Motions").[1]

Applicants argue that, pursuant to 11 U.S.C. § 347(b) and upon completion of the time allowed under 11 U.S.C. § 1143, the unclaimed funds become property of the debtors. For the reasons discussed below, this Court finds that these long ago dissolved and fully liquidated former debtors (the "Debtors") are not "debtors" under § 347 entitled to the funds in the Court registry. Thus, neither the Applicants nor the former officers or directors who executed the assignments to the Applicants are entitled to the funds, and the

Unclaimed Funds Motions will be denied. The funds shall remain in the court registry subject to recovery only by the creditors who were entitled to the distributions under the plans.

### *Factual and Procedural Background*

#### A. *The AGA Liquidation*

Gerald Stevens Inc., and several subsidiaries, including subsidiary AGA, filed voluntary Chapter 11 bankruptcy petitions commencing this case on April 23, 2001. The Debtors were unable to reorganize and remain in business. The assets, primarily the individual floral shops, were sold, and the Debtors filed a joint liquidating plan. The Second Amended Joint Plan of Liquidation ("Plan") (DE # 1024–1) was confirmed on April 2, 2002 (DE # 1314). Under Article V of the Plan, all assets, other than those distributed directly to the primary secured creditor, were vested in the AGA Liquidating Trust for liquidation and distribution to creditors. The assets were vested in the Liquidating Trust "free and clear of all [c]laims, liens, interests and encumbrances, including interest of equity security holders, except as otherwise provided under the Plan" [Plan, ¶ 5.1].

The Plan provided for full payment to priority creditors, certain payments to the lenders who were partially secured, and pro rata distribution of the balance of the funds in the Liquidating Trust to Class 4 unsecured creditors. The Debtors' equity holders were placed in Class 5 and under the Plan "receive no property whatsoever on account of their Allowed Interest[s]" [DE # 1024–1, Art. 4 ¶ 5]. The Plan provides further that "any and all claims that the holder of an equity interest in the Debtors could bring, by virtue of their equity ownership, either against the Debt-

---

1. Omega Consulting and Jacob Consulting will be individually referred to in this Opinion as "Omega" and "Jacob" and collectively referred to as "Applicants."

ors or their respective agents, members, affiliates, representatives, officers or directors shall be transferred to the Liquidating Trust, and the Liquidating Trustee shall have the sole right to prosecute any such claims". *Id.* Under Article VII of the Plan, the Liquidating Trustee was responsible for making the distributions, including the final distribution, which was to be made after all assets were liquidated. The Plan did not provide for the distribution of unclaimed funds. The records of the Florida Department of State reflect that AGA was administratively dissolved on October 4, 2002.

Distribution took place in accordance with the Plan. The distribution process was completed, and the Liquidating Trustee deposited $112,389.13 in unclaimed funds into the Court's registry in 2007. A Final Decree was entered on November 15, 2007 [DE # 1922], and the estate was closed. On the date Jacob filed its Motion, there was approximately $86,690.46 in unclaimed funds remaining in the Court's registry. Jacob's Motion asserts that it is the assignee of the Debtor, AGA, by and through an assignment executed by its last known President, Tom Boesen.

## B. *The Rich International Airways Liquidation*

Rich International Airways, Inc. ("Rich") filed a voluntary Chapter 11 bankruptcy petition on November 18, 1996. Like AGA, Rich was unable to continue its business operations, and its assets were liquidated and distributed under a liquidating plan. Rich's Second Amended Joint Plan of Liquidation ("Plan") (DE # 404) was confirmed by an order of this Court on April 27, 1998 (DE # 648).[2] Under the terms of the Plan, all property of the estate was transferred to and vested in a

Liquidating Trust [Plan, ¶ 6.1].[3] A Liquidating Trustee was appointed to liquidate all remaining assets and distribute the proceeds to creditors. After distribution to certain priority and secured creditors, the Plan provided for pro rata distribution of the balance of the money in the Liquidating Trust to general unsecured creditors [Plan, ¶ 5.14].

Paragraph 5.16 of Rich's confirmed Plan provides that "[e]ach holder of an Allowed Interest in the Debtor shall receive any and all Liquidating Trust Assets that remain in the Liquidating Trust after payment in full of all Administrative Claims, Post Confirmation Administrative Claims, Priority Tax Claims and Allowed Claims, plus Post–Petition Interest, if applicable, in Classes [1] through [15] . . . ." When Omega filed its Motion, the unsecured creditors had not been paid in full. Thus, interest holders were not entitled to any distribution. Plan Paragraph 5.16, analogous to AGA's plan, provides that, "all Interests in the Debtor, whether allowed or not, shall be extinguished and cancelled on the Effective Date." Paragraph 6.33 of the Plan provides that Unclaimed Funds "shall be deposited into the Registry of the Bankruptcy Court."

The records of the Florida Department of State reflect that Rich was administratively dissolved on October 16, 1998. The Liquidating Trustee did not have sufficient funds to begin distributions to unsecured creditors until a large litigation matter brought in funds in excess of $26,000,000 in 2004, more than six years after confirmation. The Liquidating Trustee obtained an Order authorizing an interim distribution on December 9, 2005 [DE # 1254], and he completed the liquidation of assets

---

2. Because the AGA and Rich Plans have similar language that is at issue here, the term "Plan" will be used to refer to both unless otherwise specified.

3. The only exception were certain licenses which were transferred to an entity 100% owned by the Liquidating Trustee.

and distribution of proceeds in 2007. The Liquidating Trustee deposited the remaining funds into the registry of the court in a series of deposits in 2007 and 2008, totaling just under $800,000. A Final Decree (DE# 1623) was entered on October 30, 2008, and the estate was closed.

Omega's Motion asserts its rights to the remaining funds in the court registry, alleged to be $430,122.63, as the assignee of the former debtor, Rich, by virtue of an assignment executed by Stephen Meenan, a former officer and director of Rich.[4]

### C. *Briefing and Argument on the Motions*

The Court conducted a joint preliminary hearing on the Unclaimed Funds Motions on July 7, 2010. The hearings were consolidated because Omega and Jacob are represented by the same counsel and both assert rights based upon the same legal arguments. Prior to the hearing, the former Liquidating Trustee for AGA filed a Memorandum in Opposition to [the Motion] [DE# 1975].

Following the preliminary hearing, the Court entered its July 9, 2010 Order Setting Further Hearing and Briefing Schedule on Motions for Release of Unclaimed Funds (the "July 9th Order") [DE# 1703 in Rich]. The July 9th Order scheduled a final hearing on September 8, 2010, set a briefing schedule, and directed the parties to address several issues, including the applicability of the Florida and Nevada statutes cited by the Applicants, and the

applicability of the Plan provisions to the Motions. Several memoranda were filed,[5] and oral argument was presented at the September 8, 2010 final hearing. After thorough review of the Motions, the memoranda, and relevant statutes and case law, after consideration of the arguments presented at the final hearing, and for the reasons that follow, the Unclaimed Funds Motions will be denied. These funds cannot and will not be disbursed to former officers and directors of these Debtors or to the Applicants, as alleged assignees of the former Debtors.

### *Discussion*

■ The issue before the Court is the following: After confirmation of a liquidation plan of reorganization in which a debtor is dissolved, all of its assets are liquidated, and no entity acquires the assets of the debtor under the plan, may a former officer or director recover unclaimed creditor distributions on behalf of the former debtor?

Applicants rely primarily on 11 U.S.C. § 347(b), which provides as follows:

Any security, money, or other property remaining unclaimed at the expiration of the time allowed in a case under chapter 9, 11, or 12 of this title for the presentation of a security or the performance of any other act as a condition to participation in the distribution under any plan confirmed under section 943(b), 1129, 1173, or 1225 of this title, as the

---

4. The Court does not reach the issue of whether Stephen Meenan could act on behalf of the dissolved debtor, Rich, or whether Tom Boesen could act on behalf of the dissolved debtor, AGA. No matter who signed the assignments purporting to act on behalf of the Debtors, the Court finds that neither the dissolved Debtors nor the Applicants as alleged assignees of the dissolved Debtors, are entitled to the funds.

5. In AGA, the Liquidating Trustee filed an Objection and Memorandum [DE # 1975], the Miami–Dade County Tax Collector filed a Response [DE # 1976], the United States Trustee filed an Objection [DE # 1977] and Jacob filed both a Reply Brief [DE # 1978] and a Post–Hearing Brief [DE # 1979]. In Rich, the United States Trustee filed an Objection [DE # 1705], the Liquidating Trustee filed an Objection and Memorandum [DE # 1706], and Omega filed a Reply Brief [DE # 1707] and a Post–Hearing Brief [DE # 1708].

case may be, *becomes the property of the debtor or of the entity acquiring the assets of the debtor under the plan, as the case may be.*

(emphasis added).

Courts agree that under § 347(b), if the debtor continues to operate after confirmation of a chapter 11 plan, all unclaimed funds could become the reorganized debtor's property. *See In re IBIS Corp.,* 272 B.R. 883, 897 (Bankr.E.D.Va.2001); *In re Goldblatt Bros.,* 132 B.R. 736, 738 (Bankr. N.D.Ill.1991) (the statute provides a bright-line rule that unclaimed funds are returned to the debtor). The much more controversial issue is whether § 347(b) has any application in liquidating plans in which the debtor is dissolved and no entity acquires the assets under the plan.

As discussed in *Collier on Bankruptcy,* Section 347(b) may not provide a particularly satisfactory result in a liquidating chapter 11 case of a corporate debtor in which no entity acquires most of the debtor's assets and the debtor essentially ceases to exist. Although there may remain a corporate shell to which assets can be returned, doing so may serve no useful purpose. The best solution may be to draft plan provisions that provide alternative dispositions of property to take effect before the time that section 347(b) would become applicable.

3 *Collier on Bankruptcy* ¶ 347.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010).

Other commentators and courts have agreed that drafters of liquidating plans should provide for disposition of unclaimed funds. *See e.g.,* Hon. Jerry W. Venters & Kyle T. Bateman, *Unclaimed Funds— What May Courts do When Reorganiza-*

*tion Plans and Statutes Fail?,* 28 Am. Bankr. Inst. J. 18 (March 2009); *In re Premiere Holdings of Texas, LP,* 393 B.R. 156 (Bankr.S.D.Tex.2008).[6]

The question is, what should happen when there is no plan provision, no surviving debtor, and no entity acquiring the assets of the debtor? In this situation, the overwhelming majority of courts have rejected efforts by the dissolved debtor to recover unclaimed funds after they have been paid into the court's registry. This Court agrees with the majority view and holds that a corporation that is dissolved pursuant to a chapter 11 liquidating plan has no right to recover unclaimed funds in the court's registry. Instead, the funds must remain in the registry (or U.S. Treasury) subject to withdrawal only by the creditors who were entitled to the distributions under the plans.

### I. A Corporation Liquidated Under a Chapter 11 Liquidating Plan is Not Entitled to Recover Unclaimed Funds Under § 347(b)

Applicants rely heavily on what appears to be the only published decision even arguably supporting their claim, *In re TLI, Inc.,* 213 B.R. 946 (N.D.Tex.1997), *aff'd,* 159 F.3d 1355 (5th Cir.1998). In that case, the district court concluded that when unclaimed funds were deposited into the court registry, the Bankruptcy Code and not the confirmed plan governed the rights of claimants to the funds on deposit. *Id.* at 951.

The court then looked to § 347(b) of the Bankruptcy Code which provides that after five years, unclaimed funds become the property of the debtor or the entity acquir-

---

**6.** Local rules may also authorize plans to direct unclaimed funds to not for profit, non-religious organizations. *See e.g.,* Southern District of Florida Local Bankruptcy Rule 3011–1(B)(2) ("A chapter 11 liquidating plan may provide that any unclaimed funds may be redistributed to other creditors or administrative claimants or donated to a not-for-profit, non-religious organization identified in the plan. . . .").

ing the assets of the debtor. *Id.* at 954. The party seeking the funds, the reorganized TLI Corporation, was held to be either the "debtor" or the "entity acquiring assets of the debtor under the plan," and therefore, the court found that applicant was entitled to the funds. *Id.* at 955.

The Court rejects *TLI* as persuasive authority in support of the Motions. First, there is a significant factual distinction between that case and those before this Court. Applicants here are asserting their claim on behalf of dissolved Debtors who acquired nothing under the Plans and had no existence after confirmation. In stark contrast, Reorganized TLI, the claimant in the *TLI* case, was created under a chapter 11 plan that specifically stated "that except as otherwise provided, 'property of Debtors shall be vested in Reorganized TLI.'" 213 B.R. at 955.

Based upon that plan provision, the *TLI* court concluded that Reorganized TLI was the entity that acquired the assets of the debtors within the meaning of § 347(b). Because of this material factual distinction, *TLI* does not answer the question presented here: Are the dissolved Debtors, AGA and Rich, "debtors" entitled to bring a claim under § 347(b)?[7]

■ In addition to this significant factual distinction, the Court disagrees with TLI's holding that plan provisions are no longer relevant after funds are deposited into the court registry. In both AGA and Rich, like many other cases, disbursements to creditors continued after the final decrees were entered. To say that the plan

is irrelevant after funds are deposited in the court registry overlooks the fact that the creditors entitled to those funds under the plan still are entitled to claim the funds based upon their rights under the plan. Numerous creditors in both Rich and AGA have applied for and successfully proven their entitlement to the funds deposited on their behalf. In AGA, eight creditors have applied for and received unclaimed funds since the Notice of Deposit of Funds with the U.S. Bankruptcy Clerk [DE # 1925].[8] In Rich, since the Notice of Deposit of Funds with the U.S. Bankruptcy Clerk [DE # 1603] on September 9, 2008, more than thirty (30) creditors have applied for and obtained funds from the Court's registry. In fact, since the filing of Omega's Motion, three additional creditors have emerged and obtained orders disbursing unclaimed funds.[9] In sum, this Court finds no legal basis for, or logic in, *TLI's* conclusion to disregard creditors' rights under a confirmed chapter 11 plan when funds are deposited into the court registry.

Having found *TLI* to be factually distinguishable and legally unpersuasive, the Court turns to the better reasoned and factually similar cases denying motions to recover unclaimed funds on behalf of debtors or their former officers or shareholders in liquidating chapter 11 cases. The two primary cases are *In re Future Trust, Inc.*, No. 85–03386, 2007 WL 4178602 (Bankr.W.D.Mo. Nov. 16, 2007), *aff'd*, 387 B.R. 574 (8th Cir. BAP 2008) and *In re*

---

**7.** The *TLI* opinion did discuss the competing arguments over whether TLI was a "debtor" under § 347. However, the court did not decide the issue "[h]aving concluded that TLI is at least an 'entity acquiring the assets of the debtor' under § 347(b)." 213 B.R. at 955. Moreover, in its discussion of whether TLI was a "debtor" under § 347, the court noted that TLI was created under the liquidating

plan, a fact entirely different than those presented here where Rich and AGA were dissolved after confirmation.

**8.** The AGA Applications are found at docket entries 1926, 1928, 1932, 1934, 1938, 1939, 1944 and 1947.

**9.** See Rich DE#s 1709, 1712 and 1715.

*Entire Supply, Inc.,* No. 91–13435, 2008 WL 336316 (Bankr.N.D.Ohio Feb. 5, 2008).

In *In re Future Trust,* the court found that a debtor who executes a chapter 11 liquidating plan is not entitled to unclaimed funds pursuant to § 347(b). Table Rock, Future Trust's parent company, through Omega Consulting, the same party that filed the Rich Motion here, sought to withdraw unclaimed funds from the registry of the court in the amount of $167,000. *Future Trust,* 2007 WL 4178602 at *1. The bankruptcy court held that Omega was not entitled to the funds emphasizing the language *"or of the entity acquiring the assets of the debtor under the plan".* *Future Trust,* 2007 WL 4178602 at *2. The confirmed plan provided that there would be no successors, officers or directors of the debtor and that the liquidating trust and trustee acquired the assets of the debtor as contemplated under § 347(b). *Id.* at *2. The bankruptcy court therefore denied the disbursement of unclaimed funds and gave the trustee, with reasonable expenses and attorneys' fees, the opportunity to explore appropriate and feasible disposition of the unclaimed funds. *Id.* at *4.

The Bankruptcy Appellate Panel for the Eight Circuit affirmed, finding the plan to be the determinative instrument for unclaimed funds motions. *In re Future Trust, Inc.,* 387 B.R. 574 (8th Cir. BAP 2008). The appellate panel found that under 11 U.S.C. § 347, the right to unclaimed funds cannot be established without reference to a confirmed plan.[10] *Id.* at 578–79. The court expressly stated that it was not persuaded by the Fifth Circuit's holding in *TLI. Id.* at 579. Future Trust's confirmed plan expressly provided that equity holders, including Table Rock, were

not permitted to receive distributions from the debtor's bankruptcy estate. *Id.* Therefore, the bankruptcy court's Order Denying Omega's Application was affirmed.

The second important decision providing authority against the Applicants' position is *In re Entire Supply* cited earlier. As in *Future Trust,* the party seeking the unclaimed funds in *Entire Supply* was Omega Consulting, the same party that filed the Rich Motion here. Omega filed as assignee of the debtor's former president who signed an affidavit stating that he had authority to act on behalf of the debtor. *Entire Supply's* plan contained no provision for the distribution of unclaimed funds but did expressly strip shareholders of equity in the corporation and provided that the debtor would not retain any employees, officers or directors. According to Ohio state law, Entire Supply ceased to exist. *Entire Supply,* 2008 WL 336316 at *1.

The court acknowledged that if the debtor, Entire Supply, had continued in existence, the unclaimed funds could be claimed by the debtor. *Id.* at *5. That was not the case. The confirmed plan had extinguished all shareholder interests, including the interests of the former president. Thus, the court found that the former president had no authority to act on behalf of the now defunct corporation. *Id.* The court therefore held that the petitioner was not the debtor under § 347(b) and that the liquidation account is the "entity acquiring the assets of the debtor." *Id.* (quoting 11 U.S.C. § 347(b)). The court held this to be the equitable solution as opposed to the alternative which would give the unclaimed funds to an officer of a

---

10. The court notes that the confirmed plan controls what happens when distributions are attempted via checks that are not cashed, checks that are returned as undeliverable and

all general actions and conditions of the parties. *In re Future Trust, Inc.,* 387 B.R. 574, 578–9 (8th Cir. BAP 2008).

corporation that no longer exists and whose creditors were not paid in full. *Id.* The court denied the Petition for Turnover of Unclaimed Funds.

The *Future Trust* and *Entire Supply* holdings were followed by Bankruptcy Judge Leonard, in North Carolina, in yet another attempt by Omega Consulting (the claimant here in Rich) to recover unclaimed funds on behalf of a dissolved debtor. In that case, *In re Conner Corporation,* No. 87–01697–8–JRL, 2008 WL 2414316 (Bankr.E.D.N.C. June 11, 2008), Omega Consulting moved in 2006 for release of funds deposited into the court registry, representing distributions in a liquidating plan unclaimed by the creditors entitled to the funds. Omega's application, filed on behalf of the long dissolved debtor, was based on an assignment executed by the debtor's former president, director and shareholder. The court denied Omega's application citing to and agreeing with *Future Trust* and *Entire Supply.* 2008 WL 2414316 at *2, *3.

Apparently in recognition of these decisions denying Omega's attempts to recover unclaimed funds, Omega and Jacob have taken a slightly different approach in their Motions here, one which they hope will yield a different result. In *Future Trust,* Omega received its assignment from the parent company of the debtor, not from the debtor. One basis for the holding was that the plan provided no distribution to equity holders. Thus, Omega and Jacob argue that the result should be different here, because the assignors, although individuals, are acting on behalf of the former debtors and the debtors, who supposedly are the entities seeking the money.

The Court finds that Omega's shift in strategy by changing the form does not change the result. As discussed in section II below, the Florida and Nevada statutes authorizing certain activities by dissolved corporations do not apply to the funds at issue here. Moreover, the fact that the assignors here are supposedly acting on behalf of the Debtors is a classic case of form over substance.

As Omega conceded at the final hearing, it does not know (or presumably care) what Stephen Meenan will do with his share of the funds if he receives the money on behalf of Rich, a company dissolved twelve years ago. There certainly is no reason to expect that Mr. Meenan (in Rich) or Mr. Boesen (in AGA) will take steps to disburse these monies to former creditors nor would this Court have jurisdiction to require such action. Thus, as a practical matter, the monies intended solely for creditors would instead be an unintended and unjustified windfall to these former officers or directors who had absolutely no right to the funds under the Plans.

*Entire Supply* and *Conner* both denied applications that, like the ones here in Rich and AGA, were made on behalf of the dissolved debtors. The Applicants still attempt to factually distinguish these cases by noting that in both *Entire Supply* and *Conner,* the liquidating plans dissolved the corporations and extinguished the rights of the officers and directors. Applicants argue that the AGA and Rich Plans did not contain similar provisions, thereby entitling the former officers to continue to act on behalf of the Debtors.

These minor factual distinctions should not, and do not, change the result. A liquidating chapter 11 plan that fully administers the assets of a corporation should be treated the same in analyzing what to do with unclaimed funds whether or not the plan specifically dissolves the debtors or, like here, the Debtors are administratively dissolved by operation of law. Moreover, there is no legal or logical reason to give former officers or directors of these long dissolved Debtors any great-

er rights than the officers and directors of *Entire Supply* or *Conner Corporation* just because their rights were not specifically extinguished in the Plans. Whether or not the officers' and directors' authority was specifically extinguished by a provision in the Plans, there is no question that all authority to administer the assets of these Debtors was vested in the Liquidating Trustees.

■ Finally, even if the Motions here arguably are different in any respect from those filed in the prior cases discussed earlier, this Court addresses the issue head-on and holds that a former debtor whose assets were fully administered in a chapter 11 liquidating plan is not a debtor under § 347(b) with a right to recover unclaimed funds. Instead, as discussed in section III, *infra*, the money will be treated just like unclaimed funds in a chapter 7 case and remain available only to the rightful claimants.

## II. *The State Statutes Cited by Applicants do not Support Distribution of the Unclaimed Funds to Applicants*

Applicants argue that under state law, dissolved corporations like AGA and Rich still are authorized to take actions to wind up their affairs. They argue that obtaining the unclaimed funds is within the scope of these statutes, in particular Florida Statutes § 607.1405 and Nevada Revised Statutes § 78.585.

■ These arguments are misplaced. First, state law only determines rights and obligations in bankruptcy when the Bankruptcy Code does not supply a federal rule or guidance on the issue. *In re Wright*, 492 F.3d 829, 832 (7th Cir.2007) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Here, for the reasons discussed at length in section I above, under applicable federal law, Rich and AGA are no longer "debtors"

under 11 U.S.C. § 347(b) and thus have no right to the funds.

■ Second, even if these statutes could be considered in evaluating the Motions, recovery of unclaimed funds following the liquidation of a company's assets in a Chapter 11 case is not an act authorized by these statutes. Florida Statutes § 607.1405 states:

(1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(a) Collecting its assets;

(b) Disposing of its properties that will not be distributed in kind to its shareholders;

(c) Discharging or making provision for discharging its liabilities;

(d) Distributing its remaining property among its shareholders according to their interests; and

(e) Doing every other act necessary to wind up and liquidate its business and affairs.

Fla. Stat. Ann. § 607.1405(1) (West 2011).

Nevada Revised Statutes § 78.585 states that the corporate body continues for the purposes of "prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established." Nev. Rev.Stat. Ann. § 78.585 (West 2011).

■■ All of the actions contemplated by those statutes have already been accomplished. The Liquidating Trusts collected the Debtors' assets, disposed of property, discharged liabilities and obli-

gations, settled and closed the respective businesses and distributed the remaining property according to creditors' interests under the Plans. In short, all acts that were necessary to wind up the affairs of AGA and Rich were performed in these Chapter 11 cases. The unclaimed funds that Applicants are seeking are not new funds coming into the estates that are subject to administration under state law. Rather, they are funds derived years ago from liquidation of the Debtors' assets that are waiting to be claimed by creditors. The goals of the state statutes have been accomplished already through the Plans. Both AGA and Rich have been successfully "wound up" in these bankruptcy cases. Therefore, the state laws cited by Applicants have no relevance to the Motions.[11]

### III. The Unclaimed Funds in These Cases Shall be Treated Like Unclaimed Funds in a Chapter 7 Case

Having determined that the Applicants in Rich and AGA, as alleged assignees of the Debtors, have no right to the unclaimed funds, the Court comes back to the question of who can get the money. The answer seems clear. The funds should remain in the court registry (or U.S. Treasury) and be dealt with in the same way unclaimed funds are dealt with when deposited into the registry by a chapter 7 trustee for a chapter 7 corporate debtor whose assets are fully administrat-

ed in a bankruptcy case. *See Premiere Holdings*, 393 B.R. at 159 (noting the impossibility of complying with § 347(b), the court concluded that the funds should be deposited into the court registry and disposed of under 28 U.S.C. § 2042).

This result makes sense. After all, a debtor whose assets are fully administered by a liquidating trustee under a chapter 11 liquidating plan is virtually identical to a debtor liquidated by a chapter 7 trustee. Once the trustee in a chapter 7 or a liquidating trustee in a liquidating chapter 11 has fulfilled his or her obligation to disburse the money to creditors, there is no viable alternative (absent a provision in the plan) other than to deposit any unclaimed funds into the court registry to be held by the court for five years and thereafter by the United States Treasury subject only to a claim by the creditor entitled to the funds. *See* 28 U.S.C. § 2042. This result is both consistent with the purpose and goal of liquidating plans and necessary to prevent a grossly inequitable windfall to a long-dead debtor's former officers, directors or shareholders.

The Court's holding also hopefully will bring a just end to the Applicants' cross country search to obtain large fees as assignees of former officers, directors or shareholders of former debtors who have absolutely no right to these monies for themselves, or on behalf of the long-dead

---

**11.** It also appears that any action under the Florida and Nevada statutes would be time-barred. In Florida, a three-year period extends the life of the corporation for the purpose of winding up and liquidating, and all suits must be brought before the three-year period lapses. *McGlynn v. Rosen*, 387 So.2d 468, 469 (Fla. 3d DCA 1980); *Nelson v. Miller* 212 So.2d 66, 67 (Fla. 3d DCA 1968); *Neville v. Leamington Hotel Corp.*, 47 So.2d 8 (Fla. 1950) (continued life of dissolved corporation for only three years in order that it might

settle and close its business); *Levine v. Levine*, 734 So.2d 1191 (Fla. 2d DCA 1999). Nevada Revised Statutes § 78.585 also states that the rights of a corporation shall continue but only for two years after the date of dissolution. *Desert Fireplaces Plus, Inc. v. Eighth Judicial Dist. Court ex rel. County of Clark*, 120 Nev. 632, 636–37, 97 P.3d 607 (Nev.2004). Therefore, even if these statutes had any possible relevance to unclaimed funds applications, actions under these statutes would be time-barred.

debtors whose assets were dealt with fully in liquidating plans.

### Conclusion

The money at issue in the Motions belongs to the creditors, not to former officers or directors purporting to act on behalf of long ago dissolved debtors or to funds locators that purport to act on the Debtors' behalf. The funds can and will remain in the registry of the court for their proper and only beneficiaries, the creditors for whom the distributions were intended. If the Applicants want to provide a service consistent with the Bankruptcy Code, the Plans and general principles of equity, and still make a buck, they can do what others are continuing to do: Find the rightful recipients of these funds and claim the money on their behalf. Therefore, it is—

**ORDERED** as follows:

1. Omega's Unclaimed Funds Motion [Rich DE# 1697] is denied.

2. Jacob's Unclaimed Funds Motion [AGA DE# 1950] is denied.

3. The funds remaining in the court registry will remain available, upon proper application, to the unsecured creditors of Rich and AGA pursuant to 28 U.S.C. § 2042.

**ORDERED.**